Benjamin SPOCK et al., Appellees,

v.

Bert A. DAVID, Commander, Fort Dix Military Reservation, and James R. Schlesinger, Secretary of Defense, Appellants.

No. 73–1995.

United States Court of Appeals, Third Circuit.

Argued June 14, 1974.

Decided Aug. 14, 1974.

As Amended Sept. 23, 1974.

David Kairys, Kairys & Rudovsky, Philadelphia, Pa., for appellees.

Jonathan L. Goldstein, U. S. Atty., Richard W. Hill, Asst. U. S. Atty., Newark, N. J., for appellants.

Before STALEY, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case is before us on an appeal from a final order of the district court which granted injunctive relief protecting plaintiffs' first amendment rights from interference by the military authorities at the Fort Dix Military Reservation. The case was before us in October, 1972 on an appeal from the denial of a preliminary injunction, which we reversed. Spock v. David, 469 F.2d 1047 (3d Cir. 1972). At that time two categories of plaintiffs were before us. Spock and Hobson were candidates of the Peoples Party for President and Vice President of the United States in the election to be held on November 7, 1972. Jenness and Pulley were candidates for the same offices of the Socialist Workers Party. They had been denied permission to conduct a political meeting or to distribute political literature on the Reservation. We referred to those plaintiffs and the Socialist Workers Party as the candidates. Ginaven, Misch, Hardy and Stanton were individual political activists who in the past had distributed leaflets within the Fort Dix Military Reservation, and who had, as a result of that activity, received from the commanding officer of that base letters ejecting them from Fort Dix and barring their reentry. We referred to Ginaven, Misch, Hardy and Stanton collectively as the barred pamphleteers. In reversing the district court we remanded for the entry of a preliminary injunction directing the defendants to cease from interfering with the political campaigning by the candidate-plaintiffs between the date of our opinion and November 7, 1972. We directed that the case be set down for a final hearing promptly to dispose of the candidate-plaintiffs' claim for injunctive relief after November 7, 1972, and of the claims for injunctive relief of the barred pamphleteer-plaintiffs.

On remand the district court proceeded in compliance with our mandate. It granted the candidate-plaintiffs prelimi-

nary injunctive relief pending the November, 1972 election, and set the matter down for final hearing. On December 4, 1972 the defendants filed an answer which affirmatively pleaded that the district court lacks subject matter jurisdiction. At the outset of the final hearing the parties stipulated that the proofs taken in connection with the hearing on the preliminary injunction would be incorporated as a part of the record at final hearing. It appeared that candidate-plaintiffs, Jenness and Pulley, were not of age to be eligible under the Constitution to serve as President and Vice President and their complaint was dismissed. They do not appeal.[1] The only additional testimony offered and received at the final hearing dealt with the jurisdictional amount requirement. 28 U.S.C. § 1331.

█ The district court, with the identical factual record before it on the merits of the first amendment claim as was before us in Spock v. David, *supra,* properly treated that decision as law of the case on the first amendment issue. The defendants on this appeal are in the apparent dilemma of seeking to have us overrule Spock v. David on the merits while at the same time pressing the contention that there is no federal jurisdiction. This panel is also bound by the law of the case on essentially the same record. This being so we will not repeat the discussion of the merits of the claim. *See* Spock v. David, 469 F.2d at 1053–1056.

At the time of final hearing the candidate-plaintiffs, Spock and Hobson, though defeated in the presidential race of 1972, desired to continue political activity on the Fort Dix Military Reservation, and the barred pamphleteers desired to distribute their literature on that base. Thus the dispute over jurisdictional amount was not moot. When the case was before us on the appeal from the denial of a preliminary injunction we indicated that the only basis for federal jurisdiction was 28 U.S.C. § 1331, and that the jurisdictional amount requirement of that section must be met. We pointed out:

> "Section 1331 refers both to sum and to value. In cases in which there is an adequate remedy at law, the recovery of damages, the jurisdictional amount must be determined by reference to the sum of those damages. In cases where there is no adequate remedy at law, the measure of jurisdiction is the value of the right sought to be protected by injunctive relief." 469 F.2d at 1052.

We did not find it necessary, in passing upon the claim for preliminary injunctive relief, to detail the methods by which the right to convey a political message might be valued for purposes of § 1331. Jurisdictional amount had not then been traversed by an affidavit or answer in the district court, and we could not say as a legal certainty that the plaintiffs would never be able to establish their jurisdictional claim. Looking at the value of the right to campaign for the offices of President and Vice President, we concluded that it was more likely than not that the district court would hold that this right had a value in excess of $10,000, and we ordered a preliminary injunction. We were less certain about the ability of the pamphleteer-plaintiffs to succeed at final hearing, and declined to order a preliminary injunction.

At final hearing the plaintiffs, while continuing to urge, as they had before this court, that free speech is by definition worth more than $10,000 and that such an allegation ought not be subject to denial,[2] and while continuing to rely on 28 U.S.C. § 1331, introduced testimo-

---

1. The Socialist Workers Party remains a plaintiff.

2. *See* Cortright v. Resor, 325 F.Supp. 797, 810 (E.D.N.Y.), rev'd on other grounds, 447 F.2d 245, 250–251 (2d Cir. 1971), cert. denied, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972).

ny which the district court found "clearly indicates that the amount in controversy exceeds the $10,000 jurisdictional requirement of 28 U.S.C. 1331." Appendix at 288a (Memorandum of District Court).

That testimony established the cost of getting the plaintiffs' political message to the 28,000 people living in Fort Dix by those alternative means which would remain available to them were the challenged bar orders to remain in effect. The testimony was that the alternative means comprised paid advertisements on television and radio stations which broadcast to that viewing area, paid advertisements in print media which the military authorities permitted to circulate on the reservation and direct mail. A full page advertisement in an edition of *Time* magazine which accepted regional advertising for New Jersey would have cost $12,125.00 in black and white and $18,790.00 in color. Local radio advertising which could be received at Fort Dix would cost $1,116.00 a week. A direct mailing would cost between $3,500.00 and $4,000.00 per 1000 soldiers. The testimony suggested that none of the alternatives would be likely to be as effective a means of communication to the target population as the rallies and the pamphlets prohibited by the military defendants.

 The defendants do not challenge the testimony that the cost of alternative means of communication of the political messages sought to be transmitted would far exceed $10,000. They contend that all this undisputed evidence, on which the district court relied in finding the requisite jurisdictional amount, is irrelevant. Their attack is frontal and total. They urge that first amendment rights are incapable of valuation, and that absent a new congressional enactment, there is no federal forum whatsoever for the protection of those rights against deprivations by federal officials. In a footnote they suggest, citing Arnold, The Power of State Courts to Enjoin Federal Officers, 73

Yale L.J. 1385 (1964), that state courts similarly lack power to enjoin federal officers. Their position, in short, is that no court may entertain a civil suit against a federal officer to enjoin his interference with the exercise of rights protected by the first amendment. If the defendants' frontal and total attack were to succeed they would, of course, have no interest in anything we might have said in Spock v. David, *supra*, on the merits of the first amendment claim, since they would be free to do as they pleased regardless. But we are past that point. In Spock v. David, 469 F.2d at 1051, we expressly declined to follow Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir.), cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970). The rights here in issue are intangible, but they are no more incapable of valuation in money than is pain and suffering, or reputation, or the intangible value of a proper selective service classification, or the intangible value of the right to be tried by a civilian rather than a military tribunal. *See* Sedivy v. Richardson, 485 F.2d 1115 (3d Cir. 1973). We have approved valuation of the good will of a trademark, for jurisdictional amount purposes, by looking at the amount spent in advertising the mark. Schering Corporation v. Sun Ray Drug Co., 320 F.2d 72, 76 (3d Cir. 1963). The testimony that means of communication alternative to those of which the plaintiffs would be deprived by the continuance of the challenged bar orders would cost in excess of $10,000 was sufficient, for purposes of § 1331, to quantify the value of the rights here sought to be protected. The finding of the district court that such alternative means would cost in excess of $10,000 is amply supported by the record.

 The defendants urge that the plaintiffs did not offer proof of the cost of relatively inexpensive alternative techniques of communication such as opening a storefront in Wrightstown, New Jersey, adjacent to one of the entrances to the reservation, and that the

district court did not discuss such alternatives. But the defendants offered no evidence as to the availability or cost of the suggested alternatives, or as to their communicative effectiveness compared to the barred activities. They cannot on appeal suggest that the district court's finding, based on the evidence which was presented, was clearly erroneous. There is federal question jurisdiction under § 1331.

■ Since on the record made in the district court jurisdictional amount was the only matter not governed by the law of the case announced in Spock v. David, *supra,* we affirm. While we have not repeated in this opinion the discussion of the merits of the first amendment claim set forth in our earlier opinion, we deem it appropriate to note that nothing said there and nothing set forth in the district court's injunction [3] should be construed as limiting the authority of the military officials at Fort Dix to restrict access by non-military personnel generally to any part of the reservation, or to issue bar notices to and evict persons from even the open areas of the reservation for unlawful activities.

The judgment of the district court will be affirmed.

3. The injunction provides:
"2. Defendants are permanently directed to cease and are permanently enjoined from: (1) interfering with political campaigning by the plaintiffs Spock, Hobson, and Socialist Workers Party, or with the distribution of campaign literature on their behalf within the unrestricted areas of the Fort Dix Military Reservation; and (2) interfering with distribution of literature by the plaintiffs, Ginaven, Misch, Hardy and Stanton, within the unrestricted areas of the Fort Dix Military Reservation. This injunction shall not apply, however, to the areas designated as restricted by the military command at Fort Dix.
3. The right of the candidate plaintiffs to campaign and the right of the candidate and pamphleteer plaintiffs to distribute literature shall be subject to such restrictions as to time, place and numbers of persons involved as shall be shown by defendants to be necessary to prevent interference with the military mission of the Base and the flow of military and civilian traffic.

4. Defendants shall make no requirement of prior submission or approval of the contents of any communication distributed by plaintiffs.
5. Defendants are further enjoined from enforcing Fort Dix Regulation 210–27 insofar as it requires prior submission and approval of materials to be distributed on the Base. In addition, defendants are enjoined from enforcing Fort Dix Regulation 210–26 insofar as it prohibits political speeches on Fort Dix by the prevailing plaintiffs.
6. Defendants are enjoined from issuing bar notices and letters to plaintiffs based on the constitutionally protected activity described in this order. The order of this Court shall not be construed to prevent defendants from issuing bar notices and evicting persons from Fort Dix for other unlawful activity."
Appendix at 291a–92a (Final Order of the District Court).