

For the reasons stated above, defendant's motions for summary judgment as to all the antitrust claims will be granted, and all the antitrust claims will be dismissed. Defendant's counterclaim will also be dismissed. Defendant's motion for summary judgment as to the § 480–2 claim will be denied. All of plaintiffs' motions for summary judgment or for jury instructions will be denied. The evidentiary motions will be denied with leave to renew at the appropriate times. The parties are requested to submit appropriate orders consistent with this opinion.

C. Thomas Anderson, Frankfort, Ky., for the Secretary of State.

David R. Boyd, Rogovin, Stern & Huge, Washington, D. C., C. William Swinford, Jr., Lexington, Ky., Donald L. Gulich, Porter & Gulich, Louisville, Ky., for plaintiff.

**John B. ANDERSON, Plaintiff,**

v.

**Frances Jones MILLS, Secretary of State, et al., Defendants.**

**Civ. A. No. 80–18.**

United States District Court,
E. D. Kentucky,
Frankfort Division.

June 10, 1980.

## MEMORANDUM

SILER, District Judge.

This case was brought under the diversity jurisdiction of the Court, 28 U.S.C. § 1332. Plaintiff, Congressman John B. Anderson, is a candidate for president of the United States who originally was running as a Republican, but who, on April 24, 1980, announced that he was withdrawing as a candidate for the Republican nomination and would seek the presidency as an independent.

He seeks to have his name stricken from the ballot on the upcoming presidential primary election in Kentucky on May 27, 1980, and has requested declaratory and injunctive relief from the defendants, the Kentucky Secretary of State and members of the Kentucky State Board of Elections, to lock out the voting machines throughout Kentucky or to obliterate his name on the machines or ballots, so that he would not be a candidate in the primary. He does not want to be a candidate in the primary be-

cause his staff has been informed by the defendant Secretary of State that if he were defeated in the primary election, his name could not be placed on the ballot in November as an independent, under Kentucky's "sore loser's" law, KRS 118.345:

(1) No candidate who has been defeated for the nomination for any office in a primary election, shall have his name placed on voting machines in the succeeding regular election as a candidate for the same office for the nomination to which he was a candidate in the primary election except that if a vacancy occurs in the party nomination for which he was a candidate in the primary election his name may be placed on voting machines for the regular election as a candidate of that party if he has been duly made such party nominee after the vacancy occurs as provided in KRS 118.105.

The sequence of the events is important. On April 2, 1980, in accordance with KRS 118.580, the Board of Elections nominated the plaintiff and several others to appear as presidential candidates on the primary ballot. At that time, plaintiff fit the criteria as set out in KRS 118.580:

The state board of elections shall convene in Frankfort fifty-five (55) days before the date fixed by law for the holding of primary elections. At the meeting required by this section, the board shall nominate as presidential preference primary candidates all those generally advocated and nationally recognized as candidates of the political parties for the office of the President of the United States.

. . .

However, even if nominated the candidate must take affirmative steps after he has been notified of this action, by depositing $250.00 with the Secretary of State and forwarding to her a notice of candidacy form, in accordance with KRS 118.600. Plaintiff admits he complied with this, so he was not an involuntary candidate.

Immediately after Congressman Anderson announced his intention to seek the presidency through an independent candidacy, he notified the Secretary of State in writing, signed and properly notarized, pursuant to KRS 118.212. Although it was mailed on April 24, 1980, it was not received by the Secretary of State until April 28, 1980. In the meantime, on April 25, 1980, she had certified to the County Clerks of Kentucky's 120 counties the names of the candidates that should be on the primary ballot. When Congressman Anderson's letter of withdrawal was received, the Secretary of State advised him it was not timely filed, and so refused to have his name stricken or to issue another certification to the clerks.

Other events occurred which have some bearing on this case. On the date that the State Board of Elections nominated Congressman Anderson and others to be on the ballot for the Republican primary, it refused to place on the Democratic ballot the name of Richard B. Kay. Suit was filed by Kay to enjoin the Secretary of State and the Board of Elections to place his name on the Democratic ballot. On April 23, 1980, this Court, acting through Judge William O. Bertelsman, entered a preliminary injunction, prohibiting the printing or distribution of ballots unless Kay's name appeared thereon, and later made that injunction permanent. In a subsequent opinion in that case, Judge Bertelsman held that KRS 118.-580 was constitutionally void for vagueness. Nevertheless, the remedy granted was to place Kay's name on the ballot, not to strike out all the names of previously nominated candidates.

The first question for this Court is whether it has jurisdiction in the matter. The defendants assert that the Court does not, because there is not $10,000.00 in controversy. There was a serious question in the mind of the Court as to whether the right of Congressman Anderson to be stricken from the primary ballot was capable of monetary valuation. If it is not, then there cannot be $10,000.00 in controversy, so the matter does not come within the jurisdiction of this Court. See *Amen v. City of Dearborn*, 532 F.2d 554 (6th Cir. 1976); *Goldsmith v. Sutherland*, 426 F.2d 1395 (6th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 353,

27 L.Ed.2d 270 (1970). However, plaintiff presented testimony to show that after Congressman Anderson announced his intention to withdraw as a candidate on the Republican ticket, his campaign organization in Kentucky spent $10,400.00 on efforts to have his name placed on the ballot as an independent in November. Although it might be argued that as Congressman Anderson already had his name on the ballot in one place, it would be pure speculation to assume that he would be defeated in the Republican primary and at the Republican convention, so his aim, that is, to be president of the United States, may ultimately be accomplished, whatever this Court does. However, the Court need not reach a final decision on whether the jurisdictional amount at this time is fully capable of money valuation. It is enough at this point that the Court has determined that it appears that there is a means of placing a value on his candidacy as an independent which, under his theory of the case, depends upon his withdrawal as a partisan candidate. Therefore, at this stage of the proceedings, the Court will not dismiss for lack of jurisdiction.

The requirements for the issuance of preliminary injunctive relief are set out in *Mason Co. Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir. 1977). The failure of the plaintiff to meet two of those criteria causes this Court to deny the request for injunctive relief.

First, the plaintiff has not shown irreparable injury. He is assuming that the Secretary of State will not allow him on the November ballot as an independent, if he loses as a candidate in the Republican primary. However, the statute involved, KRS 118.345, may not even apply to a presidential candidate, for a person does not become nominated for office through the presidential primary in Kentucky or any other state. That is accomplished by a national convention. The primary election is only to direct the vote of the delegates on the first ballot at the national convention. KRS 118.640. Therefore, there is a question as to whether any presidential candidate can be "defeated for the nomination" in the primary. More-

over, this Court could at a subsequent time decide that Congressman Anderson's withdrawal was timely made and issue a declaratory judgment that Anderson was not a candidate in the primary election. This would prevent him from being considered a defeated candidate, for legal purposes.

More important, however, is the fact that the plaintiff has not shown a substantial likelihood of success on the merits. His withdrawal of his candidacy was not received in the Secretary of State's office until after the certification had been made. Although he argued that the withdrawal was effective as of the time that Congressman Anderson had a press conference on national television on April 24, 1980, KRS 118.212 clearly provides that the Secretary of State must be notified in writing. Congressman Anderson has not alleged that the Secretary of State discriminated against him or that the Secretary of State acted in bad faith when she issued the certification on April 25, 1980. It may be argued that there would be no harm to anyone if Anderson's name was stricken from the ballot, but there must be some cut-off date, so that the election officials can begin preparing the election machines and printing the ballots. If anything, the Court should insure that all candidates who are interested can be placed on the ballot, rather than trying to exclude them. This was the general tenor of the opinion by Judge Bertelsman in *Kay v. Mills,* 490 F.Supp. 844, (E.D.Ky. 1980).

Congressman Anderson has also argued that because Judge Bertelsman ruled that the nomination procedure was void for vagueness, his nomination by the Board of Elections was void, so that he has never properly been a candidate in the primary. In reality, Judge Bertelsman held that the nominating procedure was void in its *exclusion* of candidates, not in its nomination of candidates, as he allowed all the other candidates who were nominated to be kept on the ballot. Although this Court might eventually rule that this decision by Judge Bertelsman would void the nomination of Congressman Anderson, it is not now per-

suaded that this shows a substantial likelihood of success on the merits.